# Richmond

## JOHN NATHAN CALDWELL

## V.

## COMMONWEALTH OF VIRGINIA

August 28, 1980

Record No. 791457

Present: Carrico, Harrison, Cochran, Poff, Compton, and
Thompson, JJ., and Harman, S.J.

*Andrew H. Hook* (*Babb, Oast, Hook and Crowe,* on briefs), for appellant.

*Vera S. Warthen, Assistant Attorney General* (*Marshall Coleman, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

In this appeal, the question presented for our determination is whether the trial court should have declared a mistrial because the court clerk read a certain statute to the jury.

The defendant, John Nathan Caldwell, was tried on an indictment containing four counts charging him, while an inmate of the Portsmouth City Jail, with injuring a jail employee, escaping from jail, possessing an instrument for the purpose of escaping and aiding other inmates to escape, and damaging jail furniture, fixtures and fastenings for the purpose of escaping and aiding others to escape therefrom. Upon his arraignment, Caldwell pleaded not guilty to each count as it was recited by the clerk. The clerk informed the jurors that they must determine whether Caldwell was guilty as charged in the indictment or not guilty. If they found him guilty, the clerk continued, "the following is the law", and the clerk then read in full Code §§ 18.2-55[1] and 53-291[2] to which reference was made in the indictment.

---

[1] "§ 18.2-55. Bodily injuries caused by convicts.—If an inmate in a penal institution as defined in § 53-19.18 et seq., of the Code of Virginia or while in the custody of an employee thereof shall injure:

"(a) An employee thereof, or

"(b) Any other person lawfully admitted to such institution, except another inmate, or

"(c) Any person who is supervising or working with inmates, or

"(d) Any such employee or other person while such inmate is committing any act in violation of § 53-291 of the Code of Virginia, such inmate shall be guilty of a Class 5 felony."

[2] "§ 53-291. Felonies by convicts in general.—It shall be unlawful for an inmate in a penal institution as defined in § 53-19.18 or in the custody of an employee thereof to do any of the following:

"(1) [Repealed.]

"(2) To escape from such penal institution operated by the Department of Corrections or from any person in charge of such inmate; or

"(3) Willfully break, cut or injure any building, furniture, fixture or fastening of such institution or any part thereof for the purpose of escaping or aiding any other inmate to escape therefrom or rendering such institution less secure as a place of confinement; or

"(4) Make, procure, secrete or have in his possession any instrument, tool or other thing for the purpose of escaping from or aiding another to escape from such penal institution or person; or

"(5) Make, procure, secrete or have in his possession a knife, instrument, tool or other thing not authorized by the superintendent which is capable of inflicting death or bodily injury; or

"(6) Procure, sell, secrete or have in his possession any chemical compound which he has not lawfully received; or

"(6a) Procure, sell, secrete or have in his possession a controlled substance classified in Schedule III or marijuana; or

"(7) Introduce into a penal institution or have in his possession firearms or ammunition for firearms; or

"(7a) Maliciously burn or maliciously destroy by use of any explosive device

The clerk incorrectly read the classification of the crime described in § 18.2-55 as a Class 3 felony rather than as a Class 5 felony. He incorrectly read the explanatory word for the elimination of subparagraph 1 of § 53-291 as "Omitted", rather than as "Repealed".

At the conclusion of the reading, Caldwell moved, out of the presence of the jury, for a mistrial on the grounds that he was prejudiced and the jury was confused as to the law by the reading in its entirety of § 53-291, which listed six other serious but irrelevant crimes in addition to three of the four offenses with which he was charged. The motion was overruled, the trial court stating that Caldwell was not charged with "those offenses" (not included in the indictment), and that the jury later would be instructed as to the relevant charges and punishment. Caldwell then renewed the motion on the additional ground that the clerk had read what would happen if he were convicted, that his sentence would not run concurrently with other sentences. The trial court again overruled the motion, observing that the provision prohibiting parole was not prejudicial but, if anything, was beneficial to Caldwell.

The trial court then informed the jury that Caldwell was being tried on four counts, numbered one, three, four, and five,[3] and that the applicable law would be given in the instructions of the court. After the presentation of evidence had been completed, instructions were given that correctly prescribed the permissible punishment that could be imposed by the jury for each charge upon a finding of guilt. These instructions did not contain any reference to parole or to consecutive or concurrent sentences.

The jury, finding Caldwell guilty on all counts, fixed his punish-

---

or substance, in whole or in part, or cause to be so burned or destroyed, any publicly owned personal property, within any such penal institution; or

"(8) Conspire with another inmate or other inmates to commit any of the foregoing acts.

"For violation of any of the provisions of this section, the inmate shall be guilty of a Class 6 felony; provided that if the violation is of paragraph (2) of the section and the escapee is a felon, he shall be sentenced to a minimum of one year's confinement and one year of the sentence imposed shall be served consecutively with any other sentence. The prisoner shall, upon conviction of escape, immediately commence to serve such escape sentence, and he shall not be eligible for parole during such period. No part of the time served for escape shall be credited for purpose of parole toward the sentence or sentences, the service of which is interrupted for service of the escape sentence, nor shall it be credited for such purpose toward any other sentence."

[3] A fifth count, numbered two, had been dismissed earlier for reasons not relevant to this appeal.

ment at five years for injuring the jail employee as charged in count one, five years for escape as charged in count three, five years for possession of an instrument for the purpose of escape as charged in count four, and one year for breaking furniture, fixtures and fastenings of the jail as charged in count five. Judgment was entered upon the verdict.

Caldwell was entitled, of course, to a fair trial on only those charges included in the four counts of the indictment for which he was answerable. At the very outset of the trial, however, he was confronted with the clerk's action in directing the jurors' attention to six other crimes, including, for example, the inflammatory offense of possession of a controlled drug. We are aware of no worthwhile purpose to be served by permitting the clerk or any other court officer to read to the jury a statute listing crimes with which an accused is not charged. Nor could the Attorney General suggest to us any justification for such a procedure.

Even the reading of § 18.2-55 delineating a crime with which Caldwell was charged was not required to inform either Caldwell or the jury. At Caldwell's arraignment, the four counts in the indictment upon which he was to be tried were read to him, and he entered his plea to each one. Thereafter, it was the function of the court, not the clerk, to instruct the jury in the law. Accordingly, the reading of both statutes by the clerk was not only an unnecessary act but was also an intrusion, albeit unintended, upon the prerogatives of the court. We now consider whether the reading of § 53-291 constituted reversible error.

■ The Attorney General first contends that Caldwell failed to make timely, specific objection to the reading of § 53-291 and is therefore precluded from raising the issue by Rule 5:21. We do not agree.

Caldwell did not object to the clerk's reading of § 18.2-55 because this statute defined one of the offenses with which the accused was charged. Nor did he object to the reading of those subparagraphs of § 53-291 that listed the other three crimes for which he was being tried. Caldwell concedes that this much information could properly be given to the jury. But Caldwell says that he was taken by surprise when the clerk continued his reading to include those parts of § 53-291 that defined crimes beyond the scope of the trial and prescribed the applicable punishments, with specified limitations upon parole. Undoubtedly, Caldwell should have reacted more promptly, although it could be argued with some logic that he might reasonably

have assumed that the clerk, having read that one subparagraph was omitted, would omit any others that were irrelevant. However, Caldwell moved for a mistrial as soon as the clerk completed the reading, and we hold that, under the circumstances of this case, the objection was not waived and motion was not made too late.

■ We also believe that Caldwell's motion gave sufficiently specific grounds for his objection to the reading of § 53-291 in its entirety. His objection was first based upon the recitation of irrelevant crimes which, he said, prejudiced him and confused the jury. That is sufficient specificity. After the motion was overruled, he renewed it on the ground that he was prejudiced by having the jury informed that if he were convicted his sentence would not run concurrently. This rationale was faulty insofar as it applied only to the escape charge because, as the trial court stated in denying the motion, the prohibition against parole was beneficial to Caldwell. If parole or concurrent sentences were not permissible, the jury would have no incentive to increase a sentence to offset the anticipated reduction of the prison term imposed. But it is implicit in the objection that as to the crimes with which Caldwell was charged, other than escape, parole and concurrent sentences were permissible, and the jury, having been so informed, might decide to fix his punishments at longer prison terms than would otherwise be imposed. The wording of the objection was inartful, but the implication was plain enough.

■ The Attorney General argues that any error committed by permitting the clerk to read § 53-291 to the jury was not prejudicial to Caldwell and does not require reversal of his conviction. However, error will be presumed to be prejudicial unless it plainly appears that it could not have affected the result. *Joyner* v. *Commonwealth,* 192 Va. 471, 477, 65 S.E.2d 555, 558 (1951). In view of the manner in which § 53-291 was read, the jury might reasonably have assumed that, since the clerk read that the first subparagraph was omitted, all other subparagraphs must be relevant, regardless of the trial court's subsequent enumeration of the counts in the indictment and assurances of further instructions.

The cases cited by the Attorney General from other jurisdictions are distinguishable. In *State* v. *Shadding,* 17 N.C. App. 279, 194 S.E.2d 55, *cert. denied,* 283 N.C. 108, 194 S.E.2d 636 (1973), the court assumed that error had been committed when a court official read to the jury an offense with which the defendant was not charged, but held the error harmless in view of the court's instructions and "the defendant's failure to show that a different result would likely

have occurred". 17 N.C. App. at 281-82, 194 S.E.2d at 56. This ruling, which appears to reverse the presumption of prejudice that we have approved, is not persuasive. However, in *State* v. *Coward,* 296 N.C. 719, 252 S.E.2d 712 (1979), error was held to be harmless under a different rationale. There, the defendant was charged with burglary and felonious larceny, but was arraigned only on the burglary charge. The trial judge read both charges to the jury, but the Supreme Court of North Carolina held the error under the particular circumstances of the case to be harmless where it could not be perceived that the error misled the jury or affected the verdict.

The clerk's error in reading part of the habitual criminal charge at a defendant's trial on a narcotics charge was held harmless in *Jones* v. *State,* 93 Nev. 287, 564 P.2d 605 (1977), when the evidence of guilt was overwhelming and the defendant's status as a felon was known from other evidence. And in *State* v. *Conklin,* 115 N.H. 331, 341 A.2d 770 (1975), reading the indictment for first degree murder to the jury, although the state had elected to proceed only as to second degree murder, was held not to be prejudicial when the trial court immediately corrected the error. To the same effect is *Evans* v. *State,* 402 S.W.2d 756 (Tex. Crim. App. 1966).

In the present case, moreover, we are concerned with the references in § 53-291 not only to crimes with which Caldwell was not charged, but to parole and consecutive sentences. We have held in many cases, the most recent being *Hinton* v. *Commonwealth,* 219 Va. 492, 247 S.E.2d 704 (1978), that the trial court should not inform the jury that its sentence may be reduced by another arm of the Commonwealth. It is error for the trial court or counsel to give such information to the jury. *Jones* v. *Commonwealth,* 194 Va. 273, 276, 72 S.E.2d 693, 694 (1952). We agree with the Attorney General that the clerk's reading of the statute would have less impact upon the jury than the court's affirmative response to a juror's inquiry as to parole in *Hinton.* Nevertheless, the clerk's reading carried the imprimatur of the court. It was error for this court official to read the references to parole and consecutive sentences.

The Attorney General urges that we not adopt a *per se* rule whereby any mention at trial of the word "parole" would constitute reversible error, and we do not adopt or approve such a rule. It would be unrealistic to expect jurors in this era to be totally unaware of the availability of parole. Therefore, it is necessary in each case to determine whether the presumption of prejudice from the error has been overcome. If so, the error is rendered harmless.

Where a minimum sentence is imposed, such an error in informing the jury as to parole is harmless. *Coward* v. *Commonwealth*, 164 Va. 639, 646, 178 S.E. 797, 799 (1935). Caldwell, however, received the maximum sentence on two of the four counts of which he was convicted.

As we have demonstrated, the twofold error in permitting the clerk to read § 53-291 in its entirety is presumed to be prejudicial. Under the circumstances of this case, we cannot say that the presumption of prejudice was overcome and that the error was harmless as to the quantum of punishment imposed. *See Hinton* v. *Commonwealth, supra,* 219 Va. at 496, 247 S.E.2d at 706; *Stover* v. *Commonwealth,* 211 Va. 789, 796, 180 S.E.2d 504, 509 (1971).

We will reverse the conviction and remand the case for a new trial.

*Reversed and remanded.*