## Manassas

### STEVE G. JOHNSON

v.

### COMMONWEALTH OF VIRGINIA

No. 0579-85

Decided November 18, 1986

COUNSEL

Thea Rossi Barron, for appellant.

Leah A. Darron, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**DUFF, J.**—Steve G. Johnson appeals from a statutory burglary conviction for which he was sentenced to serve two years in the penitentiary. He assigns as error the admission into evidence of a bent nail, identified by expert testimony as a lock-picking device that he possessed approximately four weeks prior to the offense.

On October 16, 1984, at approximately 7:15 p.m., the police were dispatched to Olympic Sporting Goods, Inc. to investigate sounds heard by the police dispatcher over the telephone monitoring device used by the business to enable the police to monitor the store during off hours. Before closing the store, an employee triggered the system by dialing a specified number and leaving the telephones off the hook. A phone was located near the front of the store, one in the middle, and one in the office at the rear of the store.

When the police arrived at the scene, they noted that the front door was unlocked and closed and that the store was dark. The lock appeared to have been picked. One officer went to the rear entrance of the store and found the back door locked. He shined his flashlight into the office window and observed Johnson inside with a shiny object in his mouth.

Upon entering the front of the store, the police observed Johnson inside walking toward them from the rear of the store. He told them that he found the front door open and went inside to call someone. There was no evidence, however, that anyone had spoken into the store telephones or tried to make a call. The evidence showed that there were people in the area at the time of the offense and that the establishment next door was open for business. Johnson stated that he had been at a nearby Drug Fair store where he purchased a bag of chips, which was later found in his car. He pointed in the direction of the store. However, the store he indicated was no longer a Drug Fair store and had not been one for approximately three years prior to the offense. At the scene, the police found the key to the store's bank bag on the floor in the hallway leading to the office in the back of the store. The police also found a bent nail on the floor in the office where Johnson was first observed. Three store employees testified that on the date of the offense, just prior to closing, the store was vacuumed, and no bent nail or key was observed on the floors.

The Commonwealth made known its intention to establish Johnson's possession and use of the nail found on the floor of the burglarized premises by showing that four weeks earlier he was arrested in Maryland with a similar nail in his possession. Johnson filed a motion *in limine* asking the court to suppress such evidence or to admit "only relevant and material information which specifically excludes any reference to any prior criminal conduct by the defendant."

After hearing the arguments of counsel, the trial court ruled that the Maryland nail could be introduced, but not to show evidence of another crime, scheme, plan or design. Pursuant to the court's ruling, the Maryland officer, who was not identified to the jury as a policeman, testified that he had "received" Commonwealth's Exhibit #3 (the Maryland nail) from Johnson. The Commonwealth also called an expert witness in the field of firearms and tool mark identification. He testified that he was familiar with various locks and lock-picking devices. He further testified that the nail found in the store was "something that is consistent with a lock-picking device or a tension tool for picking locks." The prosecutor then asked him for his assessment of the Maryland nail. The expert testified that this nail was "very similar" to the nail found in the store. He stated that it had been "remanufactured in the same sort of way" and that it was also consistent with a lock-picking device. Both nails had been bent and flattened on the end. The expert did *not* testify, however, that these nails were unusual or distinctive burglary tools, dissimilar to the methods generally used for picking locks. No other evidence regarding the nails was introduced. Thus, while the introduction of the Maryland nail was "sanitized" by the elimination of any reference to its use in a Maryland crime, the jury clearly knew through the expert testimony that it was a device that could be used for lock picking. We find that the trial court erred in admitting the Maryland nail into evidence.

The clear inference the Commonwealth sought to have the jury draw from this evidence was that if Johnson possessed a similar lock-picking device on a prior occasion, he probably possessed the one found in the store. Such propensity logic has been uniformly rejected in Virginia.

The Supreme Court has stated:

The general rule is well established that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged.

*Kirkpatrick v. Commonwealth*, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970); *see Sutphin v. Commonwealth*, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985).

■ The reason for this rule is that "such evidence confuses one offense with the other, unfairly surprises the defendant with a charge he is unprepared to meet, and, by showing that the accused has a criminal propensity, tends to reverse his presumption of innocence of the crime on trial." *Lewis v. Commonwealth*, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983). As noted by the Commonwealth, there are numerous exceptions to the general rule. However, "[e]ven if the other crime falls within an exception to the general rule, it only is admissible '[w]henever the legitimate probative value outweighs the incidental prejudice to the accused.' " *Tuggle v. Commonwealth*, 228 Va. 493, 506, 323 S.E.2d 539, 547 (1984), *vacated on other grounds*, 85 L. Ed. 835 (1985).

■ One exception to the general rule is that evidence of other wrongdoing is admissible to prove identity of the accused where the prior criminal acts are so distinctive as to indicate a *modus operandi. Sutphin*, 1 Va. App. at 245-46, 337 S.E.2d at 899.

This court has stated:

[W]here evidence of a separate crime is used to establish the identity of the accused, more is required than merely proving repeated commission of crimes of the same class. Generally, *the device used* to commit the crime, or the manner in which the crime was committed, must be *so unusual and distinctive as to act as a signature.*

*Id.* at 246-47, 337 S.E.2d at 900 (emphasis added). *Sutphin* held that a cinderblock thrown through a glass door was not a sufficiently distinctive *modus operandi* to establish the perpetrator's identity, even though two such incidents occurred within two

hours in the same city.

 Other courts that have considered this issue have also emphasized the necessity of showing some unique quality of the two acts. Thus, in *People v. Allweiss*, 48 N.Y.2d 40, 396 N.E.2d 735, 421 N.Y.S.2d 341 (1979), the court stated:

> [I]n order to identify the defendant in this manner it is not sufficient to show that he has committed similar acts *if the method used is not uncommon.* Simply categorizing the defendant as one of many criminal specialists would be of little probative value in determining whether he committed the crimes charged, and the prejudice would be obvious.

*Id.* at 47, 396 N.E.2d at 738-39, 421 N.Y.S.2d at 345 (emphasis added).

And, in *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979), the court stated:

> The establishment of a *modus operandi* requires that the methods used in the commission of the two acts must be *both similar to each other and dissimilar to the methods generally used in such offenses.* The crux of a *modus operandi* is that it identifies one person as the perpetrator of various offenses. As such, there must be a distinctive factor in the methods used. This determination rests upon a review of the facts of the particular case.

*Id.* at ____, 596 P.2d at 755 (emphasis added)(citations omitted).

Turning to the evidence presented by the Commonwealth in the present case, we are unable to conclude that under the balancing process required by *Tuggle*, the probative value of the Maryland nail outweighed its prejudicial effect. Although the Commonwealth's expert testified that the nails were "very similar" and that they had been "remanufactured in the same sort of way," there was no testimony that the nails were unusual or distinctive. Neither was there testimony that use of such nails for the purpose of committing a burglary was an unusual or distinctive *modus operandi*, dissimilar to the methods generally used in the commission of such offenses. In short, the record is devoid of evidence from which the jury could have concluded, without resort to spec-

ulation, that Johnson's prior possession of the Maryland nail was relevant to his alleged possession of the bent nail found at the scene.

Absent evidence that use of a bent, flattened nail is an unusual method of picking a lock, or that the two nails were themselves so unusual that possession of one would necessarily imply possession of the other, evidence regarding the Maryland nail lacked significant probative value. The jury was allowed to infer that because Johnson possessed a burglary tool on a prior occasion, he probably possessed the one found in the store. In the absence of evidence that the nails were distinctive, the probative value of such a comparison is minimal.[1] When balanced against the prejudicial effect of the evidence of prior misconduct—the possibility that the jury would engage in the prohibited practice of assuming guilt of the offense charged on the basis of the prior misconduct—the probative value of this evidence is deficient.

Further, admission of such evidence was highly prejudicial to Johnson. As the Supreme Court stated in *Day v. Commonwealth*, 196 Va. 907, 86 S.E.2d 23 (1955): " '[I]f the circumstances have no intimate connection with the main fact; if they constitute no link in the chain of evidence; then, supposing them innocent, their admission, to be sure, may do no harm, yet they ought to be excluded, because they are irrelevant; *but if they denote other guilt, they are not only irrelevant, but they do injury, because they have a tendency to prejudice the minds of the jury*; and for this additional reason, they ought to be excluded.' " *Id.* at 912-13, 86 S.E.2d at 26 (quoting *Walker v. Commonwealth*, 28 Va. (1 Leigh) 574, 577 (1829)) (emphasis added).

Thus, although there may well have been sufficient competent evidence to convict, we are unable to conclude that the erroneous admission of Johnson's prior possession of a burglary tool was harmless error. As the court stated in *Bunting v. Commonwealth*, 208 Va. 309, 314-15, 157 S.E.2d 204, 208 (1967): "The jury could have given the same weight to the [improper evidence] as assigned by the Commonwealth for their admissibility. Hence

---

[1] *See New York v. Rojas*, 503 N.Y.S.2d 783 (Sup. Ct. 1986), where the court held that possession of a glassine envelope containing cocaine marked "Capital" was not so distinctive as to identify the defendant as the seller of heroin in a glassine envelope also marked "Capital."

their admission was prejudicial and prevented the accused from having that character of an impartial trial to which one is entitled, however guilty he may be."

Accordingly, the conviction is reversed and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Keenan, J., and Cole, J., concurred.