**Alexandria**

CLEANDREW FOSTER

v.

COMMONWEALTH OF VIRGINIA

No. 1353-85

Decided November 17, 1987

COUNSEL

Robert L. Tomlinson, for appellant.

Maria Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**DUFF, J.** — This appeal arises from two jury trials that resulted in eight convictions. On June 25, 1985, Cleandrew Foster was found guilty of rape, robbery, burglary, and the use of a firearm during the commission of the rape and robbery. In accordance with the jury's verdict, he was sentenced to a term of fifty years imprisonment. On September 19, 1985, Foster was convicted of attempted rape, burglary, malicious wounding, and the use of a firearm during the commission of the felonies. The court imposed the jury's recommendation of a life sentence for the burglary and twenty-seven years confinement for the other offenses. On appeal, Foster contends that his convictions should be reversed because in both trials, the court admitted improper evidence of other crimes. We agree and reverse.

In the first trial, Cheryl, the complaining witness, testified that on September 10, 1983, as she approached her apartment located in the Four Mile Run area of Arlington County, she was confronted by a man with a small handgun. She identified the man as Cleandrew Foster and stated that he forced her into the apartment where he raped and robbed her.

Foster denied committing the offenses, stating that on September 10, 1983, he and an acquaintance, Harold, went to Cheryl's apartment to collect money that her boyfriend owed Harold. He stated that after a discussion, the three of them went outside to his van where they "freebased cocaine." Foster also testified that, after using the drugs, Cheryl engaged in consensual intercourse with him and Harold. He further stated that he did not have a gun with him that evening and that he had never owned a firearm.

In rebuttal, the Commonwealth offered the testimony of Ninoska, the prosecutrix in the second trial, who stated that Foster committed similar offenses on September 19, 1983. She testified that she was approached by Foster in central Arlington, where he displayed a small handgun, forced his way into her apartment, held the gun to her head, demanded money, told her to remove her pants, pulled her blouse, and punched her in the face, breaking her nose.

At the close of Ninoska's testimony, the court instructed the jury that the evidence was not to be considered in assessing Fos-

ter's punishment, but that it could be used to determine "his credibility and whether or not there was consent and any other relevant issues that you deem necessary."

During closing argument, the Commonwealth repeated the details of Ninoska's testimony, stating that such evidence was critical because it showed that Foster committed the same crimes nine days after he committed the crimes in the present case.

The second trial involved the offenses that were allegedly committed on September 19, 1983, against Ninoska, the rebuttal witness in the first trial. Prior to trial, the Commonwealth requested that the court rule on the admissibility of Cheryl's[1] testimony as substantive evidence on the issues of identity and specific intent. Defense counsel objected to the testimony on the ground that its probative value was clearly outweighed by its prejudicial effect. The court overruled the objection and held that the evidence was admissible "in light of the fact that . . . Foster [was] raising an alibi defense."

During its case-in-chief, the Commonwealth called Ninoska, the prosecutrix, who offered essentially the same testimony that she gave in rebuttal at Foster's first trial. Cheryl also testified during the Commonwealth's case-in-chief, stating that Foster committed similar offenses against her on September 10, 1983. The court then instructed the jury that Cheryl's testimony was offered to prove identity and specific intent, but that it should not be used in determining punishment.

On appeal, Foster argues that the trial court erred in admitting Ninoska's rebuttal testimony at his first trial and Cheryl's testimony at his second trial because such testimony constituted improper evidence of other crimes. He argues that the testimony was offered merely to show his propensity to commit the offenses charged in each indictment and that its admission resulted in overwhelming prejudice.

Evidence of offenses, prior or subsequent to those charged in an indictment, is admissible as an exception to the general exclusionary rule if relevant to a material issue or element of consequence in the case. *Hawks v. Commonwealth*, 228 Va. 244, 247,

---

[1] The prosecutrix in the first trial.

321 S.E.2d 650, 652 (1984).

> The circumstances surrounding a separate crime may be relevant: (1) [T]o prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a *modus operandi*; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part.

*Sutphin v. Commonwealth*, 1 Va. App. 241, 245-46, 337 S.E.2d 897, 899 (1985).

■ "With respect to these exceptions, the test is whether 'the legitimate probative value outweighs the incidental prejudice to the accused.' " *Hawks*, 228 Va. at 247, 321 S.E.2d at 652 (quoting *Lewis v. Commonwealth*, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983)).

■ The thrust of the court's ruling in the first trial was that Ninoska's testimony was proper to prove a lack of consent by the prosecutrix. We hold that the admission of this testimony was reversible error. The fact that Ninoska had been attacked nine days after the offenses under indictment had no bearing as to whether Cheryl consented to the intercourse. It merely showed that Foster had a propensity to commit this type of crime. This is precisely what the prosecution is not allowed to show in a criminal case. *See Kirkpatrick v. Commonwealth*, 211 Va. at 269, 272, 176 S.E.2d 802, 805 (1970).

■ The rule that forbids the introduction of evidence of other crimes, insofar as it establishes a criminal tendency on the part of the accused, is not a mere technical rule of law. *Lovely v. United States*, 169 F.2d 386 (4th Cir. 1948).

> It arises out of the fundamental demand for justice and fairness which lies at the basis of our jurisprudence. If such evidence were allowed, not only would the time of courts be

wasted in the trial of collateral issues, but persons accused of crime would be greatly prejudiced before juries and would be otherwise embarrassed in presenting their defenses of the issues really on trial.

*Id.* at 389.

In *Lovely*, the Fourth Circuit held that the trial court erred in admitting evidence that the defendant committed a similar offense fifteen days prior to the offense under indictment. The court found that the fact that one woman was raped by the accused did not tend to prove that another woman did not consent. In pointing out the inherent unfairness in admitting this evidence, the court stated:

[N]ot only was the trial prolonged by controversies foreign to the issue before the jury, but accused was called upon to defend another charge of rape, while his hands were full defending the charge contained in the indictment, and the jury was necessarily given the impression . . . that he was a bad man who had been guilty of other crimes and who might well be convicted on that account.

*Id.*

A similar result was reached in *State v. Irving*, 24 Wash. App. 370, 601 P.2d 954 (1979). In that case, the state contended that a witness' rebuttal testimony was relevant to contradict the defendant's assertion that the sexual acts were consensual. In rejecting the state's position, the court concluded:

[T]he majority of jurisdictions and the better reasoned decisions hold that, when rape is the crime charged, detailed evidence of the defendant's forceful rape or attempted rape of another woman on a prior occasion is inadmissible as substantive evidence to corroborate the proxecutrix's claims of the defendant's use of force and her lack of consent.

*Id.* at _____, 601 P.2d at 957 (citing *Lovely*, 169 F.2d 386).

Accordingly, we hold that in the first trial, the court erred in permitting Ninoska to testify in detail regarding the offenses of September 19, 1983. We hold that the admission of this evidence

constituted reversible error and, therefore, reverse and remand for a new trial.

In the second trial, the disputed testimony was offered to prove identity and Foster's intent to rape and rob the prosecutrix. We hold that the admission of this evidence constituted reversible error.

■ One basis for admitting evidence of other crimes is to prove the identity of the criminal. *United States v. Woods*, 484 F.2d 127, 133-34 (4th Cir. 1973), *cert. denied*, 415 U.S. 979 (1974); *Huffman v. Commonwealth*, 168 Va. 668, 683-84, 190 S.E. 265, 272 (1937). "The defendant's identity as the person who committed the other crimes, because of their unusual characteristics and similarities to the crime for which the defendant is on trial, creates an inference that he or she also committed the crime on trial." *Curtis v. Commonwealth*, 3 Va. App. 636, 638, 352 S.E.2d 536, 537 (1987). However, for other crimes to be admitted, even on the issue of identity, the probative value of such evidence must outweigh any incidental prejudice to the accused. *Hawks*, 228 Va. at 247, 321 S.E.2d at 652.

■ The use of evidence of a separate crime to establish identity requires more than merely proving the commission of crimes of the same class. "[T]he manner in which the crime was committed, must be so unusual and distinctive as to act as a signature." *Johnson v. Commonwealth*, 3 Va. App. 444, 448, 350 S.E.2d 673, 675 (1986)(quoting *Sutphin*, 1 Va. App. at 246-47, 337 S.E.2d at 900)(emphasis omitted)).

We previously considered this issue in *Curtis*, *Sutphin*, and *Johnson*, and emphasized the need to show a quantity of similarities or some unique quality between the other crime and the crime under indictment. In *Curtis*, the defendant was charged with two counts of rape and two counts of sodomy and burglary. On appeal, he argued that the trial court erred in admitting evidence that he had raped and sodomized a second victim and attempted to rape a third victim. The circumstances surrounding the three crimes revealed overwhelming similarities of time, place, method of operation, mode of entry, language by the assailant, and scientific evi-

dence from a PERK[2]. Based upon the quantity of similarities among the three crimes and the distinctive manner in which they were committed, we held that the evidence was admissible to prove the identity of the first victim's assailant. 3 Va. App. at 641-42, 352 S.E.2d at 539.

In *Sutphin*, we held that the court erred in admitting evidence of a prior burglary, finding that the mode of entry (a cinder block thrown through a glass door) was not a sufficiently unusual *modus operandi* to establish the perpetrator's identity, even though the two incidents occurred within two hours in the same city. 1 Va. App. at 247, 337 S.E. at 900.

In *Johnson*, we found that a bent nail, which the defendant possessed four weeks prior to the offense, was not a sufficiently distinctive lock-picking device to establish the criminal's identity. In reversing the conviction, we held that the evidence was inadmissible because it had limited probative value and was highly prejudicial to the defendant. 3 Va. App. at 449-50, 350 S.E. 2d at 676.

Turning to the evidence presented by the Commonwealth in the present case, we find that the similarities between the prior offenses and those under indictment were not so numerous and distinctive as to act as a signature. *See Curtis*, 3 Va. App. at 638, 352 S.E.2d at 538; *Johnson*, 3 Va. App. at 448, 350 S.E.2d at 675. Cheryl testified that on a previous occasion, Foster approached her with a small handgun and forced her into her apartment in Arlington where he raped and robbed her. This description of events is one that characterizes numerous offenses by other perpetrators. Accordingly, we find that its probative value was minimal, especially in light of the extreme prejudice that resulted from such a detailed account of a prior rape and robbery.

We also find that Cheryl's testimony was inadmissible to prove Foster's intent to commit rape and robbery. If evidence of another crime is offered ostensibly to prove intent, it is still not admissible if the actual issue is identity or commission of the act itself. *Henderson v. Commonwealth*, 5 Va. App. 125, 129, 360 S.E.2d 876, 878 (1987); *see also Donahue v. Commonwealth*, 225 Va.

---

[2] In the investigation of a sexual assault, a physical evidence recovery kit (PERK) is prepared for laboratory analysis, obtaining samples of blood, head and pubic hairs, vaginal and oral secretions, and other physical evidence from the victim.

145, 154-56, 300 S.E.2d 768, 773-74 (1983). During a motion *in limine*, the Commonwealth stated that it would not introduce Cheryl's testimony if Foster stipulated that he was the person who entered Ninoska's apartment on the date of the offenses. This statement was made in light of the fact that Foster intended to present an alibi defense. The Commonwealth's offer was not accepted. Accordingly, we believe that the Commonwealth offered the disputed testimony to prove Foster's identity. As previously stated, the prior offenses were not admissible on this issue because they did not reveal a distinctive *modus operandi*.

In summary, we find that the trial court improperly admitted evidence of other crimes. Upon review of the record, we cannot conclude that the admission of Ninoska's rebuttal testimony at the first trial and Cheryl's testimony at the second trial was harmless error. The evidence was prejudicial and prevented Foster from having a fair trial. Accordingly, we reverse the judgments and remand for new trials if the Commonwealth be so advised.

*Reversed and remanded.*

Koontz, C.J., and Hodges, J., concurred.