**Richmond**

MACK ARTHUR WHITE

v.

COMMONWEALTH OF VIRGINIA

No. 1181-87-2

Decided January 30, 1990

COUNSEL

Michael C. Allen (Anthony H. Robinson; Robert E. Walker, Jr., on brief), for appellant.

Frank S. Ferguson, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.**—This is an appeal from convictions for rape and sodomy. The defendant contends that the trial court erred in admitting evidence of an attempted rape for which he was not being

tried. We hold that the evidence of the attempted rape, although factually similar, did not demonstrate a distinctive methodology justifying its admission. We conclude further that the introduction of that evidence was not harmless beyond a reasonable doubt.

The acts of rape and sodomy for which the defendant was convicted occurred on February 13, 1987 in the women's public restroom at a Howard Johnson's near Interstate 95. The victim was standing at the sink, facing a mirror, when she saw a man's reflection. When she turned around, the defendant put a knife to her face. He forced her into one of the restroom stalls and raped and sodomized her. Meanwhile, two female companions of the victim entered the restroom and asked the victim if she was all right. When the victim did not respond, one of the companions peered over the stall and made eye contact with the defendant. She also saw that the defendant was holding a knife. The defendant ran out of Howard Johnson's and drove away, but not before the victim's companion had noted the license plate number. Later, the police used the license plate number to find and arrest the defendant.

Earlier that same evening in a women's restroom at a McDonald's near Interstate 95, a little over three miles away, a similar incident occurred. A man holding a knife in his hand approached a woman as she was standing at the sink. The assault was prevented, however, when the victim's companion came out from one of the stalls and chased the man away.

At trial, the Commonwealth introduced the evidence of the attempted assault at McDonald's. The trial court instructed the jury that it could consider this evidence only for the purpose of establishing the identity of the person who committed the crime for which the defendant was being tried.[1] The Commonwealth contends that the two incidents reflected a distinctive *modus oper-*

---

[1] The instruction read: "[t]he Commonwealth has introduced evidence of a prior activity of the defendant which allegedly occurred at an earlier time on the same evening at the McDonald's restaurant in Henrico County and which bore some of the same characteristics and similarities to the crime for which the def. [sic] is on trial.

"You may consider this evidence solely for the purpose of proving the identity of the perpetrator of the crimes for which the def. [sic] is being tried and for no other purpose.

"You are not to consider this evidence in fixing punishment should you find the defendant guilty.

"As other instructions tell you, you are to judge the evidence as a whole."

*andi.* We conclude that, although the two crimes were similar, they were not so distinctive as to establish a common modus operandi.

■ The presence of a common *modus operandi* involved in two or more crimes may be sufficient to allow evidence of one crime for which the defendant is not on trial to be admitted to prove the identity of the person who committed the crime of which the defendant is charged. *Johnson v. Commonwealth,* 3 Va. App. 444, 448, 350 S.E.2d 673, 675 (1986); *Sutphin v. Commonwealth,* 1 Va. App. 241, 247, 337 S.E.2d 897, 900 (1985). This situation is an exception to the general rule that evidence of other crimes is not admissible in the trial of a different crime. *Id.*

■ To fall within this exception, "the device used to commit the crime, or the manner in which the crime was committed, must be so unusual and distinctive as to act as a signature." *Sutphin,* 1 Va. App. at 247, 337 S.E.2d at 900; *see also Johnson,* 3 Va. App. at 448, 350 S.E.2d at 675. The operative phrase "so unusual and distinctive as to act as a signature," imposes a stricter test than merely determining whether the crimes were similar. *Henderson v. Commonwealth,* 5 Va. App. 125, 128, 360 S.E.2d 876, 878 (1987). This exception recognizes that a person who performs one act is probably the same person who performed another distinctively similar act. *Id.* The validity of this probability requires that the manner of committing the offenses be so distinctive that one can conclude that the person who committed one act also committed the other. *Sutphin,* 1 Va. App. at 247, 337 S.E.2d at 900. If two crimes are committed in a manner "so unusual and distinctive" that they must have been committed by the same person and if the identity of the person who committed one of the crimes can be established, then evidence of that crime and the identity of its perpetrator may be admitted to prove the identity of the perpetrator of the other crime.

The facts in each case determine whether the manner in which the crimes were committed were sufficiently unusual and distinctive so as to identify a common perpetrator. In one case, we held that a cinder block or brick thrown through a glass door did not establish a distinctive *modus operandi* so as to permit evidence of one attempted burglary to be admitted in the trial of another. *See Sutphin 1* Va. App. at 247, 337 S.E.2d at 400. In another case, we held that a specially bent nail used as a burglary tool, although

"very similar," was not "so unusual or distinctive" so as to constitute a distinctive *modus operandi. See Johnson*, 3 Va. App. at 449, 350 S.E.2d at 675. ("Absent evidence that use of a bent flat nail is an unusual method of picking a lock, or that the two nails themselves were so unusual that possession of one would necessarily imply possession of the other, evidence regarding the [first] nail lacked significant probative value"). We also have held that robbing a convenience store and placing stolen cigarettes in trashbags was not distinctive enough to constitute a common modus operandi, *Henderson*, 5 Va. App. at 130, 360 S.E.2d at 879; nor was the commission of rape with the use of a small handgun a modus operandi distinctive enough to be evidence that the perpetrator of one such rape was the perpetrator of another. *Foster v. Commonwealth*, 5 Va. App. 316, 323, 362 S.E.2d 745, 749 (1987). On the other hand, we have held that where, in addition to numerous circumstantial similarities of time, place, and method, the perpetrator made distinctive verbal statements and instructions to the victims of two rapes, there was a distinctive *modus operandi* sufficient to allow evidence of one rape to be admitted in the trial of the other to prove identity. *Curtis v. Commonwealth*, 3 Va. App. 636, 641-42, 352 S.E.2d 536, 539 (1987).

In this case, the rape and the attempted assault were similar to each other but were not sufficiently unusual or distinctive so as to constitute a distinctive *modus operandi*. Entering a women's public restroom and displaying a knife to a victim is not so unusual as to serve as a signature. The similarities of the two crimes are not sufficient to establish a common perpetrator.

The fact that in both incidents a companion of the victim came to the victim's aid is not a factor that may be used to establish the distinctive characteristics. The companion's actions are irrelevant to the perpetrator's methodology and are, therefore, merely coincidence.

Even though the trial court instructed the jury that the evidence of the attempted rape could only be considered to establish the identity of the person who committed the crime for which the defendant was on trial, the Attorney General, nevertheless, argues that the attacks were part of a common scheme or plan admissible to show motive, criminal intent or knowledge. We disagree. In a case similar to this one, the Supreme Court has held like evidence inadmissible. *Day v. Commonwealth*, 196 Va. 907, 915, 86 S.E.2d

23, 27 (1955). Evidence that a defendant in an attempted rape case had chased another woman, earlier in the evening, a block away from where the attempted rape victim had been attacked, was inadmissible to show the defendant's state of mind to molest women. *Id.* And, since the earlier assault was not intimately connected with any element of the offenses on trial, evidence of the earlier assault was also held inadmissible to show that the defendant was in the vicinity when the attempted rape occurred. *Id.*

Accordingly, we hold that the evidence of the attempted rape at McDonald's was inadmissible. The admission of such evidence only served the impermissible purpose of showing that the defendant had a propensity to commit this type of crime. *See Kirkpatrick v. Commonwealth,* 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970); *Foster,* 5 Va. App. at 320, 362 S.E.2d at 747.

The Commonwealth maintains that admission of the evidence of the attempted assault at McDonald's was harmless error. The Commonwealth argues that the defendant's identity as the person who raped and sodomized the victim at Howard Johnson's was established by overwhelming evidence, both direct and circumstantial.

█ Error in a criminal case requires reversal of a conviction unless the Commonwealth establishes that the error is harmless beyond a reasonable doubt. *Jones v. Commonwealth,* 218 Va. 732, 737, 240 S.E.2d 526, 529 (1978). This standard applies whether the error is of constitutional dimension, *Chapman v. California,* 386 U.S. 18, 24 (1967); *Cardwell v. Commonwealth,* 209 Va. 412, 416, 164 S.E.2d 699, 702 (1968), or non-constitution dimension. *See Hopkins v. Commonwealth,* 230 Va. 280, 287-88, 337 S.E.2d 264, 269 (1985); *Van Sant v. Commonwealth,* 224 Va. 269, 275, 295 S.E.2d 883, 887 (1982); *Fitzgerald v. Commonwealth,* 223 Va. 615, 630, 292 S.E.2d 798, 807 (1982); *Jones v. Commonwealth,* 218 Va. 732, 737, 240 S.E.2d 526, 529 (1978); *Jackson v. Commonwealth,* 218 Va. 490, 494, 237 S.E.2d 791, 794 (1977); *Goins v. Commonwealth,* 218 Va. 285, 288, 237 S.E.2d 136, 138 (1977).

Sound reasons promote application of the harmless beyond a reasonable doubt standard both to non-constitutional and to constitutional errors. *Commonwealth v. Story,* 476 Pa. 391, 406, 383 A.2d 155, 162 (1978). First, this standard corresponds exactly to

the burden of proof standard in criminal cases. *Id.* Second, applying the same standard encourages the development of a "coherent doctrine of harmless error." *Id.* at 407, 383 A.2d at 163. Third, constitutional errors are not "inherently more injurious to an accused" than non-constitutional errors. *Id.* Finally, society's interest in a fair and just criminal trial is designed to be protected by both constitutional and non-constitutional rules. *Id.* at 408, 383 A.2d at 164.

The standard to be applied in determining harmless error should not be confused with the methodology employed in determining the impact of an error. While the standard expresses the degree of confidence needed to declare an error to be harmless, the methodology used to measure the impact of an error consists of the analytical tools used in measuring whether an error may have had an impact on a trial's outcome.

The methodology begins with the application of one of two contrary presumptions, depending on the presence or absence of a curative instruction.

■ The general rule is that an error is "presumed to be prejudicial unless it plainly appears that it could not have affected the result." *Caldwell v. Commonwealth*, 221 Va. 291, 296, 269 S.E.2d 811, 814 (1980). However, if a curative instruction is given to the jury, the usual presumption of prejudice is replaced by a presumption that the jury followed the instruction and disregarded the improper evidence. *LeVasseur v. Commonwealth*, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983). In such a case, a conviction is not subject to reversal unless the error "suggests a manifest probability that it was prejudicial to the defendant. *Boykins v. Commonwealth*, 210 Va. 309, 313, 170 S.E.2d 771, 774 (1969).

In this case, a curative instruction was not given to the jury; therefore, in determining whether or not the error was harmless beyond a reasonable doubt, we must presume that it was prejudicial "unless it plainly appears that it could not have affected the result." *Caldwell*, 221 Va. at 296, 269 S.E.2d 814; *see also* Code § 8.01-678.

■ Whether erroneously admitted evidence *could have* affected a jury verdict depends upon the conclusiveness of the untainted evidence of guilt and the prejudicial impact of the error. *Story*,

476 Pa. at 410-11, 383 A.2d at 164-65. If the error is not prejudicial in any way or the prejudice is so minimal that, beyond a reasonable doubt, it could not have influenced the jury, it may be harmless. *Id.* When, as in this case, the error is prejudicial on its face but *other untainted* evidence of guilt is asserted to be overwhelming, the untainted evidence must be conclusive. *Id.* at 413, 383 A.2d at 166; *cf. Jones v. Commonwealth*, 218 Va. 732, 737, 240 S.E.2d 526, 529 (1978).

The circumstantial evidence in this case, while incriminating, was not conclusive. No hairs comparable to the defendant's hair were found on the victim, and no seminal fluid was found. A police officer had seen the defendant more than ten hours before the offense with a pocket knife in his pocket and driving a similar car with the same license plate. The license plate was later found attached to a pickup truck in a yard belonging to the defendant's father. Although the police officer's observations and the finding of the license plate tended to corroborate the eyewitness who obtained the license number of the assailant's automobile, it did not exclude the possibility that someone other than the defendant escaped from the scene of the assault in the same vehicle. The discovery of the license plate with the same number attached to a pickup truck found in the defendant's father's yard did not exclude that possibility and suggested that others had access to the plate. No evidence of the ownership of the automobile, the truck or the license plate was introduced. Likewise, there was no evidence excluding someone else's possession of the automobile or the license plate during the ten hours before the assault. Finally, the defendant's possession of a small pocket knife ten hours before the assault was a fact to be considered by the jury; however, that fact did not conclusively establish that he was the person who assaulted the victim using what she thought was a pocket knife.

The direct evidence consisted of the identification of the defendant as the assailant by the victim and her two companions. Eyewitness testimony is not infallible. The credibility of such a witness is a question exclusively for the jury. *Zirkle v. Commonwealth*, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949). Eyewitness testimony cannot be conclusive if its credibility is at issue. *See Woody v. Commonwealth*, 214 Va. 296, 300, 199 S.E.2d 529, 532 (1973).

■ The eyewitness testimony incriminating the defendant was contradicted by alibi evidence offered by the defendant. A witness on his behalf testified that she knew the defendant and that he was visiting in her home with a group of other people at or about the same time the assault on the victim occurred. A victim's eyewitness identification cannot be conclusive if it is contradicted by an alibi defense. *See Jones*, 218 Va. at 736-37, 240 S.E.2d at 529.

The jury had to weigh the testimony of the victim and her two companions against that of the defendant's alibi witness. The evidence of the other attempted assault comprised the entire second day of a two day trial. The Commonwealth offered the evidence for the purpose of showing that the defendant was also the person who committed the assault in this case, and the trial court instructed the jury that it could be considered for this purpose. If the jury attached to this evidence the significance which the Commonwealth attributed to it, the evidence was prejudicial. *See Bunting v. Commonwealth*, 208 Va. 309, 314-15, 157 S.E.2d 204, 208 (1967); *see also Henderson*, 5 Va. App. at 130, 360 S.E.2d at 879; *Johnson*, 3 Va. App. at 450-51, 350 S.E.2d at 676.

The case against the defendant was strong; the evidence persuasive; but harmless error is not established simply by the relative strength or weakness of the Commonwealth's case. Considering the presumption of prejudice, the inconclusiveness of the circumstantial evidence, the contradiction of the eyewitness testimony by the evidence of alibi, and, most importantly, the impact of the erroneously admitted evidence on the single issue at trial, the perpetrator's identity, an issue to be resolved solely on the jury's determination of credibility, we cannot say beyond a reasonable doubt that "it plainly appears that . . . [the error] could not have affected the result." *Caldwell*, 221 Va. at 296, 269 S.E.2d at 814.

In summary, it was error to admit evidence of the other attempted rape for which the defendant was not on trial because the manner of committing the two crimes did not reflect a common *modus operandi*. Since a curative instruction was not given to the jury, the inadmissible evidence presented to it is presumed to have been prejudicial unless it plainly appears that the evidence could not have affected the result. The circumstantial evidence, although incriminating, was inconclusive. The direct evidence conflicted with the defendant's rebuttal evidence and was subject to the weight given to it by the jury. We can not say that the improperly

admitted evidence of the attempted rape did not affect the jury's decision; therefore, we can not conclude that the error was harmless beyond a reasonable doubt.

For these reasons, the judgment of conviction is reversed and the proceeding is remanded for a new trial.

*Reversed and remanded.*

Koontz, C.J., and Benton, J., concurred.