COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Huff, Fulton and White
Argued at Norfolk, Virginia


JOSE GUADALUPE VERA, JR.

                                                        OPINION BY
v.        Record No. 0398-22-1         JUDGE KIMBERLEY SLAYTON WHITE
                                                        APRIL 11, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
W. Revell Lewis, III, Judge

James O. Broccoletti (Zoby & Broccoletti, P.C., on brief), for
appellant.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Appellant Jose Guadalupe Vera, Jr., raises two challenges following his convictions for

possession with intent to distribute a Schedule III drug and two counts of contributing to the

delinquency of a minor: 1) that the circuit court erred when it denied Vera's defense of

accommodation and 2) that the circuit court improperly admitted evidence of prior bad acts.

Finding that the circuit court correctly determined an accommodation defense inapplicable and

the evidence of prior bad acts admissible, we affirm.

                                    BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

During the week of May 28, 2020, seventeen-year-old K.C. and her family were visiting relatives in Northampton County. K.C.'s friend E.S., also a minor, joined them on the trip. Earlier that week, K.C. and E.S. met Jose Guadalupe Vera, Jr. ("Vera"), who was eighteen years old, and his juvenile friend A.M. During that week, the group "hung out," occasionally drank alcohol, and exchanged Snapchat messages.

On May 28, 2020, the group communicated via Snapchat and decided to meet at the beach that evening. Once at the beach, Vera poured gamma-hydroxybutyrate ("GHB"), a Schedule III drug for which Vera possessed a prescription to treat narcolepsy, into a small shot glass which he gave to K.C. and E.S. Both K.C. and E.S. testified that the group had never discussed the drug GHB and that they did not know nor were they told what was in the small shot glass that Vera served them. E.S. testified she thought it was tea. After the girls took the shot, Vera told E.S. that they had drunk GHB. Upon learning that she had ingested GHB, E.S. looked it up on her phone. During cross-examination, K.C. testified, when asked whether she and Vera had had a prior discussion about GHB, "I guess it's possible, but I don't really—I think I would remember that."

A.M. testified that he and Vera had ingested GHB before meeting up with K.C. and E.S. A.M. knew what GHB was when he drank it with Vera. A.M. saw Vera give the GHB to K.C. and E.S. but never heard Vera tell the girls that it was GHB or what it was beforehand. Unsure if there had been discussion with the girls about GHB previously, A.M. testified that, if there had been, "it was, like really quick though" and that there was not "a whole discussion about it. It was just—it was just, like, have you-all ever heard of it?"

Eventually K.C.'s mother called and told K.C. and E.S. to come home for dinner. E.S. had to drive the family golf cart back to the house because K.C. had "passed out." E.S. testified that she was "really scared" because she did not know if K.C. was having an allergic reaction because she was unaware of the effects of GHB. When the girls arrived home, K.C. was still unconscious. K.C.'s parents called 911, and her father performed CPR. When first responders arrived on scene, K.C. was still unresponsive and unconscious. After restoring K.C.'s breathing, a medic on scene administered NARCAN and K.C. was transported to the hospital. E.S., who at this point appeared intoxicated, began going in and out of consciousness. As a result of losing consciousness, E.S. was also transported to the hospital.

At the hospital, blood samples were collected from both E.S. and K.C. K.C.'s blood sample contained approximately 140 mg of GHB per liter of blood, and E.S.'s blood sample contained approximately 97 mg of GHB per liter of blood. Dr. Autumn Massiello, a forensic toxicologist, testified that GHB is uncommon and is used as a date rape drug. She also testified that the GHB concentrations in both blood samples were well above the therapeutic dose for GHB.

Vera testified that, on May 27, 2020, he had a conversation with the group regarding his narcolepsy and prescription for GHB. Vera testified that he had brought his drug with him when meeting up with A.M. the following day because they had no alcohol. Vera stated he shared the GHB with A.M. out of "generosity."

Moreover, Vera testified that he had no intention of sharing the GHB with E.S. or K.C. because, at the time he decided to bring the GHB with him, he did not know he was going to see them that day. When Vera and A.M. did eventually meet up with the girls, however, Vera testified that he asked the girls if they had any alcohol and that they had talked about the drug. Vera then poured the GHB for the girls "in front of everybody," and the girls drank it.

During cross-examination, the Commonwealth asked Vera about a previous charge for distributing GHB in high school. Vera objected to introduction of the evidence, arguing that it was a "non-relevant bad act" and had "nothing to do with this case." The Commonwealth argued that it showed "modus operandi, knowledge of an element of the offense, course of acting." The judge, after a brief recess, determined the evidence of the prior bad act was admissible. Listing the exceptions to the rule, the judge noted that the probative value of the evidence outweighed any prejudicial impact and that, sitting as the factfinder, he could "discern how to weigh [the] evidence so that it is not prejudicial in and of itself." After the judge overruled Vera's objection, Vera admitted to having previously given GHB to a girl who became sick after consumption. In addition, the Commonwealth introduced a handwritten letter, written by Vera, admitting to the prior distribution and the adverse effect of GHB on the girl.

At the conclusion of the evidence, the circuit court rejected Vera's accommodation defense. The court specifically noted that Vera "mixed [the GHB] up and gave it to [the] girls for them to use, and it was not an accommodation. [Vera] gave it to them with the intent that they use it." The circuit court found Vera guilty of possession with intent to distribute a Schedule III substance and two counts of contributing to the delinquency of a minor. The circuit court sentenced Vera to twelve months for each count of contributing to the delinquency of a minor, to be served consecutively. As for the possession with intent to distribute GHB, the circuit court sentenced Vera to five years, with four years suspended, also to be served consecutively.

## ANALYSIS

On appeal, Vera's first assignment of error is that the circuit court erroneously determined Vera's actions did not constitute distribution as an accommodation. Vera's second

assignment of error is that the circuit court improperly allowed the admission of evidence of prior bad acts.

## I. Accommodation

We begin with Vera's assertion that the circuit court erroneously rejected Vera's argument that his provision of GHB to E.S. and K.C. constituted an accommodation under Code § 18.2-248(E3). Namely, Vera argues that "[i]n this particular case, [he] neither received nor expected profit or consideration from the sharing of narcotics, and he further made no attempts to persuade, coerce, or otherwise 'induce' the victims to join them in taking the narcotics." Vera asks this Court to define, for the first time, the word "induce" and, in doing so, find that Vera's distribution was, instead, an accommodation.

"Issues of statutory interpretation are questions of law that this Court reviews *de novo*." *Laney v. Commonwealth*, 76 Va. App. 155, 162 (2022). "We apply the plain meaning of the language appearing in the statute unless it is ambiguous or applying the plain language leads to an absurd result." *Baldwin v. Commonwealth*, 69 Va. App. 75, 82 (2018) (quoting *Harvey v. Commonwealth*, 65 Va. App. 280, 285 (2015)). A "claim of accommodation, at most, raise[s] an issue of fact to be resolved by the fact finder." *Laney*, 76 Va. App. at 164 (quoting *Foster v. Commonwealth*, 38 Va. App. 549, 557 (2002)). "We review a trial court's factfinding 'with the highest degree of appellate deference.'" *Id.* at 164-65 (quoting *Joyce v. Commonwealth*, 56 Va. App. 646, 664 (2010)). "Factual findings must be affirmed unless they are plainly wrong or without evidence to support them." *Id.* at 165. It is Vera's "burden to prove by a preponderance of the evidence that he distributed [GHB] as an accommodation." *Id.* at 164.

Section 18.2-248(E3) states:

> Any person who proves that he gave, distributed or possessed with the intent to give or distribute a controlled substance classified in Schedule III or IV . . . only as an accommodation to another individual . . . and not with the intent to profit thereby from any

- 5 -

consideration received or expected nor to induce the recipient . . .
of the controlled substance to use . . . such controlled substance, is
guilty of a Class 1 misdemeanor.

To induce is to "bring about," "to move by persuasion or influence," or "to call forth or bring about by influence or stimulation." *Induce*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/induce (last visited Apr. 10, 2023). Synonyms include "cause," "prompt," and "catalyze." *Id.* Finally, the origin of induce comes from the Latin word *inducere* and means "to lead in." *Id.* Given these definitions, synonyms, and origin, this Court finds that the plain meaning of induce in Code § 18.2-248(E3) is neither ambiguous nor does its application create absurd results in the context of the statute.

Applying the plain meaning of induce in Code § 18.2-248(E3) to the facts of this case, we hold that the circuit court's finding that Vera's actions did not amount to an accommodation is not plainly wrong nor without evidence to support it. The girls themselves were ignorant of what GHB was or its effects prior to meeting A.M. and Vera. Specifically, K.C. testified on cross-examination that prior to May 28, 2020, "she had never heard of [GHB]." Likewise, E.S. also testified that she had never heard of GHB prior to meeting Vera. It is difficult to imagine how Vera could have accommodated K.C. and E.S. for something they did not know existed.

Rather, Vera initiated the use of the GHB. When asked how the topic of GHB came up prior to consumption, K.C. testified that "[Vera] just offered it to us." When asked if she had requested the GHB, K.C. said "no." Furthermore, E.S. testified that she had never requested alcohol or GHB on May 28, 2020. Instead, E.S. testified that Vera poured the GHB and offered it to her saying "hey, drink this." In his own direct examination, Vera acknowledges that he offered the girls the GHB because he was just "trying to be nice and . . . generous." In other words, Vera "brought about" or "called forth" the use of GHB—without his influence or

- 6 -

prompting, neither K.C. nor E.S. would have consumed GHB on May 28, 2020. As such, the circuit court could conclude that Vera had induced K.C. and E.S. to consume GHB.

Vera testified that "we were talking about the drug" and that he had asked K.C. and E.S. if they had consumed alcohol on May 28, 2020, because you should not mix alcohol and GHB. Again, Vera stated he offered the GHB to the girls to be "nice" and "generous." Although Vera testified that he did not "push [GHB] on them or try to influence them," the absence of coercion does not reduce the act to accommodation. Rather, the circuit court needed only to find that Vera had induced K.C. and E.S. to consume GHB, which it did. Vera had the burden of proving, by a preponderance of the evidence, that his actions constituted an accommodation and warranted a mitigated sentence. *See Laney*, 76 Va. App. at 164; *see also Stillwell v. Commonwealth*, 219 Va. 214, 225 (1978).

The plain meaning of induce in Code § 18.2-248(E3) is neither ambiguous nor does its application produce absurd results. The circuit court needed only to find that Vera had initiated the use and prompted the girls to consume GHB. After careful review of the testimony presented at trial, the circuit court was not plainly wrong as there was ample evidence to support its finding that Vera had induced the girls to consume GHB and that he failed to prove, by a preponderance of the evidence, that his actions constituted an accommodation. As such, we affirm.

## II. Prior Bad Acts

Vera's second assignment of error alleges the circuit court improperly admitted evidence of his prior bad acts. He argues that the evidence could only have been considered as evidence of propensity and not for any of the permitted exceptions. Additionally, Vera argues that the admitted evidence was unduly prejudicial.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Conley v.*

*Commonwealth*, 74 Va. App. 658, 670 (2022) (quoting *Jones v. Commonwealth*, 38 Va. App. 231, 236 (2002)). When sitting without a jury, the judge "is presumed to know the law and to apply it correctly in each case." *Crest v. Commonwealth*, 40 Va. App. 165, 172 n.3 (2003); *see also Starks v. Commonwealth*, 225 Va. 48, 54 (1983).

"[E]vidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person in order to show that the person acted in conformity therewith." Va. R. Evid. 2:404(b). "As an exception to the general rule of exclusion, however, evidence of other crimes or bad acts is admissible 'if relevant to a material issue or element of consequence in the case." *Shifflett v. Commonwealth*, 29 Va. App. 521, 529 (1999) (quoting *Foster v. Commonwealth*, 5 Va. App. 316, 319 (1987)). The court must determine if the "legitimate probative value of such proof outweighs its incidental prejudice." Va. R. Evid. 2:404(b). If so, "evidence is admissible if it tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan." *Id.*

On cross-examination, the Commonwealth attempted to question Vera regarding a prior incident involving GHB at his school. In response to Vera's objection, the Commonwealth replied that such acts are generally inadmissible, however, they could be allowed "to show . . . modus operandi, knowledge of an element of an offense, course of acting, and other offenses or other exceptions." The court then took a brief recess. Upon its return, the court began by articulating the balancing of probative value and incidental prejudice required by Virginia Rule of Evidence 2:404(b). Next, the court reiterated the many exceptions for which prior bad acts are admissible—to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or a common scheme or plan. Finally, the court noted that the trial did not

involve a jury and that "the court can discern how to weigh [the] evidence so that it is not prejudicial in and of itself."

The evidence of the prior distribution of GHB by Vera, and his recognition in the letter of the effect of the drug on the earlier recipient, could have been considered by the court as evidence of Vera's knowledge of the substance and its potential harmful effects, as well as of the absence of mistake or accident. Each of which are relevant facts pertaining to the offense charged and perhaps more relevant to the accommodation defense put forward. The purpose for the admission of the evidence was other than to show mere propensity to commit the crime. The circuit court, sitting without a jury, is presumed to have admitted the evidence for the proper purpose. *See Crest*, 40 Va. App. at 172 n.3.

We conclude by reiterating that the circuit court has "broad discretion" regarding the admission of evidence and that any ruling on admissibility will not be overturned absent an "abuse of discretion." *Conley*, 74 Va. App. at 670. Looking at the record, it is clear the circuit court knew the law because it articulated both the balancing test as well as the categorical exceptions listed in Rule 2:404(b). Finding nothing to the contrary, we presume that the circuit court applied the law correctly. *See Crest*, 40 Va. App. at 172 n.3. We affirm the circuit court's admission of the prior bad acts.

CONCLUSION

Vera failed to meet his burden showing, by a preponderance of the evidence, that his distribution of GHB to two minor girls was done as an accommodation. Namely, his interpretation that the use of the word "induce" requires proof of coercion is incorrect. In addition, Vera has failed to show the circuit court abused its broad discretion when it admitted

evidence of his prior bad acts involving GHB.   Therefore, we affirm the circuit court on both counts.

*Affirmed.*