COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Frank, Petty and Senior Judge Haley
Argued at Alexandria, Virginia


RONALD P. BERTON

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1388-12-4                       JUDGE ROBERT P. FRANK
                                                       DECEMBER 3, 2013

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge[1]

William H. Miller, Assistant Public Defender (Dusty Sparrow,
Assistant Public Defender; Office of the Public Defender, on briefs),
for appellant.

Steven A. Witmer, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Appellant, Ronald P. Berton, was convicted in a jury trial of breaking and entering with

the intent to commit aggravated sexual battery in violation of Code § 18.2-91, abduction with

intent to defile in violation of Code § 18.2-48, rape in violation of Code § 18.2-61, sodomy in

violation of Code § 18.2-67.1, and breaking and entering with the intent to commit rape in

violation of Code § 18.2-90.  On appeal, appellant argues the trial court erred in:  1) joining the

trials involving two separate victims, 2) denying appellant's motion for funds for a DNA expert,

3) excluding appellant's DNA evidence, 4) finding the evidence sufficient to sustain appellant's

conviction for breaking and entering with the intent to commit rape, and 5) denying appellant's

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Honorable Benjamin N.A. Kendrick presided over the hearing on appellant's
motion to sever the jury trials.

jury instruction on a lesser-included offense of simple abduction of Z.N. For the reasons that follow, we reverse and dismiss in part, and reverse and remand in part.

BACKGROUND

September 10, 2008 Offense

In the morning of September 8, 2008, Z.N. was asleep in her bed, located in the living room of her ground-floor apartment in Arlington County. She heard a noise in the kitchen but thought it was her roommate. She then was awakened by the sensation of her blanket moving, followed by the appellant touching her buttocks. Z.N. looked up and saw appellant, with his penis exposed, wearing a condom, masturbating with one hand while wielding a large butcher's knife from her kitchen in the other hand. Appellant had the knife in his hand during the entire incident. When asked by Z.N. how he entered her apartment, appellant responded the door was locked and he unlocked the door.

Z.N. tried to get out of her bed but appellant pushed her back. She then attempted to flee, first to the bedroom, and then out of the apartment, but each time the appellant caught her and forced her back into the living room where her bed was located. Z.N. testified that appellant grabbed Z.N. on her left bicep. The police took DNA swabs from both her right and left biceps. Z.N. told appellant her roommate would soon return, and told appellant to leave her apartment. She told him if he raped or killed her, he would go to prison.

Appellant responded, "I could have raped you, but I'm not going to." Appellant forced Z.N. to display her breasts. He again masturbated, ejaculating into a condom. A condom was recovered near Z.N.'s bed. Before leaving, appellant took a towel and a glass of water from the kitchen. He thanked Z.N., hugged her, and said he felt "blessed." He did not take the knife with him.

- 2 -

A mixture of DNA was found on the handle of the butcher's knife. Testing established that appellant could not be excluded as a contributor to the mixture and that the likelihood of a randomly selected individual being a contributor to the DNA mixture was one in 2.1 million in the Caucasian population, one in 250 million in the black population, and one in 660 million in the Hispanic population.[2]

The same day of the incident, Z.N. assisted Sergeant Fortunato of the Arlington County Police Department in preparing a composite sketch of her attacker. Fortunato testified that Z.N. had good recollection and advised him where the composite needed to be adjusted. Z.N. testified, "I definitely remembered his face." The sketch was admitted into evidence and was published to the jury. Z.N. also testified her apartment was well lit and she could see everything "very clear." Appellant was in her apartment for fifteen to twenty minutes.[3]

Corporal Avery collected various swabs from the scene, including the swabs from Z.N.'s right and left biceps.

### September 26, 2010 Offense

L.Z. lived in Arlington County, in a ground-floor garden apartment only one sixth of a mile from Z.N.'s apartment. Access to her apartment required passage through both the exterior door of the building, going down stairs and then passing through the door to her apartment.

On the evening of September 25, 2010, L.Z. was out drinking with friends and became intoxicated. She arrived at her apartment at about 2:00 a.m. on September 26, 2010, unlocked the door to her apartment, and entered. She plugged in her iPhone and went to bed. She did not testify whether she closed or locked the door.

---

[2] The condom was not tested for DNA.

[3] While the record does not indicate Z.N. identified appellant in court, Detective Michael Austin did so.

She awoke at about 10:15 a.m. on September 26, and found her iPhone and laptop computer missing. A beer had been taken from her refrigerator, and she found a condom on her couch. She went to a neighbor for assistance because she did not have a land-line telephone to call the police. While waiting for the police, L.Z. began to notice vaginal discomfort. The police took L.Z. to Fairfax Inova Hospital for examination by a sexual assault nurse examiner (S.A.N.E.), which included the use of a physical evidence recovery kit (P.E.R.K.). Sperm was recovered both from the vaginal/cervical swab and the rectal swab, establishing penetration in L.Z.'s vagina and anus.

L.Z. had no recollection of the attack or how appellant gained access to her apartment. There was no direct evidence of how appellant gained entry into L.Z.'s apartment.

A forensic scientist compared the DNA found on appellant's buccal swab with L.Z.'s anal-rectal swab and the vaginal-cervical swab. Appellant could not be eliminated as a contributor. The probability of randomly selecting an unrelated individual with a DNA profile matching that developed from the sperm fraction on both swabs is one in greater than 6.5 billion, approximately the world's population.

ANALYSIS

Motion to Sever

Prior to trial, appellant filed a motion to sever the 2008 charges from the 2010 charges. Appellant filed an exhibit with his motion proffering the differences between the two offenses:

| 2008 Charges | 2010 Charges |
|---|---|
| Forced Entry | No Forced Entry |
| Weapon | No Weapon |
| Force/Intimidation | Incapacitation |
| Masturbation | Vaginal/Anal Rape |
| Condom Used | No Condom Used |
| Interaction with Complainant | Complainant Incapacitated |
| No Valuables Taken | Valuable Electronics Stolen |

Additional proffers were made at the hearing on the motion.

- 4 -

In response, the Commonwealth argued that there are a number of factors that link the two incidents, i.e., that each is idiosyncratic to permit an inference of a pattern of behavior. The Commonwealth submitted an exhibit which listed the similarities.[4]

| 2008 | 2010 |
|---|---|
| September | September |
| Morning hours | Morning hours |
| Victim home alone | Victim home alone |
| Victim in bed | Victim in bed |
| Victim young woman (19) | Victim young woman (23) |
| Long hair | Long hair |
| Garden style apartment building | Garden style apartment building |
| Ground floor apartment | Ground floor apartment |
| Unsecured main door | Unsecured main door |
| Enters through front door | Enters through front door |
| Victim visible through window | Victim visible through window |
| Defendant brings condom | Defendant brings condom |
| Defendant takes drink with him | Defendant takes drink with him |
| DNA | DNA |

In denying the motion, the trial court found joinder was necessary to prove the perpetrator's identity and noted fourteen similarities, those listed in the Commonwealth's exhibit. The court further found a common scheme or plan and that there were idiosyncratic similarities. The court concluded the evidence of the 2008 case can be used in the 2010 case to show the perpetrator's identity and the 2010 case can be used in the 2008 case to show intent.

A court may direct that an accused be tried at one time for all offenses pending against him if (1) "justice does not require separate trials," Rule 3A:10(b), and (2) "the offenses are based on the same act or transaction, or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan," Rule 3A:6(b). Whether different offenses should be tried separately is a matter that rests within the sound discretion of a trial court. Fincher v.

---

[4] Evidence presented at trial did not support a number of the Commonwealth's proffered similarities. However, "[i]n determining whether to sever the cases for trial, the trial court should make the determination based upon the situation as it appears before trial." Spence v. Commonwealth, 12 Va. App. 1040, 1045, 407 S.E.2d 916, 918 (1991).

Commonwealth, 212 Va. 552, 553, 186 S.E.2d 75, 76, <u>cert.</u> <u>denied</u>, 409 U.S. 913 (1972).  Thus,

a trial court's ruling on the matter will not be reversed absent a showing that the court abused its

discretion.  <u>Id.</u>

A common scheme or plan is present only if the relationship among offenses is dependent

upon the existence of a plan that ties the offenses together and demonstrates that the objective of

each offense was to contribute to the achievement of a goal not obtainable by the commission of

any of the individual offenses.  <u>Spence v. Commonwealth</u>, 12 Va. App. 1040, 1044, 407 S.E.2d

916, 918 (1991).  To meet the "connected" test, the crimes should be "so intimately connected

and blended with the main facts adduced in evidence, that they cannot be departed from with

propriety."  <u>Kirkpatrick v. Commonwealth</u>, 211 Va. 269, 273, 176 S.E.2d 802, 806 (1970)

(quoting <u>Walker v. Commonwealth</u>, 28 Va. (1 Leigh) 628, 631 (1829)).

In <u>Scott v. Commonwealth</u>, 274 Va. 636, 651 S.E.2d 630 (2007), the Supreme Court of

Virginia held:

> In deciding this issue, we first observe that we have not defined the term "common scheme or plan" in the context of Rule 3A:6(b).  However, in our decisions addressing the admissibility of evidence of other crimes in criminal trials, we often have applied the term in discussing pattern offenses or *modus operandi*.  For example, in <u>Scates v. Commonwealth</u>, 262 Va. 757, 553 S.E.2d 756 (2001), we held that evidence of similar offenses is admissible to prove a "common scheme, design, or plan," for purposes of establishing a defendant's identity, when those offenses exhibit "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations."  <u>Id.</u> at 762, 553 S.E.2d at 759 (quoting <u>McWhorter v. Commonwealth</u>, 191 Va. 857, 870-71, 63 S.E.2d 20, 26 (1951)).  We also have stated that evidence of other crimes is admissible in cases of disputed identity to prove the probability of a common perpetrator, provided that the other crimes bear a "singular strong resemblance to the pattern of the offense charged" and are "sufficiently idiosyncratic to permit an inference of pattern for purposes of proof."  <u>Turner v. Commonwealth</u>, 259 Va. 645, 651, 529 S.E.2d 787, 791 (2000)

> (quoting Chichester v. Commonwealth, 248 Va. 311, 326-27, 448
> S.E.2d 638, 649 (1994))[.]

Scott, 274 Va. at 644-45, 651 S.E.2d at 635.

The Scott Court observed that the terms "common scheme" and "common plan" are not synonymous. The term "common scheme" describes crimes that share features idiosyncratic in character, which permit an inference that each individual offense was committed by the same person or persons as part of a pattern of criminal activity involving certain identified crimes. Id. at 645, 651 S.E.2d at 635. In contrast, the term "common plan" describes crimes that are related to one another for the purpose of accomplishing a particular goal. Id. at 646, 651 S.E.2d at 635. The terms "common scheme" and "common plan," however, are not mutually exclusive and a series of crimes may exhibit both a "common scheme" and a "common plan." Id. at 646, 651 S.E.2d at 635-36.

The Supreme Court of Virginia, in Spencer v. Commonwealth, 240 Va. 78, 393 S.E.2d 609 (1990), discussed "*modus operandi*":

> We adopt the standard articulated by the Seventh Circuit in United States v. Hudson, 884 F.2d 1016 (7th Cir. 1989): evidence of other crimes, to qualify for admission as proof of *modus operandi*, need not bear such an exact resemblance to the crime on trial as to constitute a "signature". Rather, it is sufficient if the other crimes bear "a singular strong resemblance to the pattern of the offense charged." 884 F.2d at 1021 (quoting United States v. Shackleford, 738 F.2d 776, 783 (7th Cir. 1984)). That test is met where the other incidents are "sufficiently idiosyncratic to permit an inference of pattern for purposes of proof," id., thus tending to establish the probability of a common perpetrator.

Spencer, 240 Va. at 90, 393 S.E.2d at 616.

Generally, evidence of other offenses is inadmissible if it is offered merely to show that an accused was likely to commit the crime for which he is being tried. There are, however, well-established exceptions to the general rule.

> Evidence of other offenses is admitted if it shows the conduct and feeling of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial.

Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805.

Appellant's assignment of error limits our inquiry to determine whether the 2008 and 2010 crimes share a common scheme or plan and whether justice requires separate trials.[5] The Commonwealth does not argue the two events are based on the same act or transaction.

While each offense had factors in common, that commonality is marginal at best. Those factors do not show an idiosyncratic pattern of behavior. It can safely be said that many crimes occur when the victim is home alone and that the perpetrator enters through the front door to a ground floor apartment. In cases of sexual assault, it would not be uncommon for the perpetrator to bring a condom.

More significantly are the dissimilarities between the two offenses. While the perpetrator brought a condom with him both times, the 2008 incident involved the use of the condom but the 2010 incident did not. The 2010 incident involved rape and sodomy but the 2008 attack only involved the perpetrator's self-gratification. The 2010 incident involved a violent sexual attack, but in the 2008 incident the perpetrator was far less aggressive. In 2010, the perpetrator stole personal property from the victim, but not so in 2008. A weapon was used in 2008, but not in 2010. In 2008, there was evidence of forced entry but no such evidence in 2010. Importantly, the two attacks were separated in time by two years. The interval between the two offenses is relevant. See Satcher v. Commonwealth, 244 Va. 220, 229, 421 S.E.2d 821, 827 (1992) (finding

---

[5] Specifically, appellant's assignment of error states: "The trial court erred in joining the 2008 case with the 2010 case where the charges were without a common scheme or plan and justice required separate trials."

common scheme when two incidents involving two victims both occurred on the evening at the same location); Foster v. Commonwealth, 6 Va. App. 313, 322, 369 S.E.2d 688, 694 (1988) (finding that where there had been a three-year hiatus between the offenses, "no action was taken to establish a common scheme or plan").

The Commonwealth argues that the rape of 2010 was relevant to prove appellant's intent to defile Z.N. in the 2008 incident and that the *modus operandi* established the identity of the perpetrator. This argument is premised on the Commonwealth's contention that there are idiosyncratic similarities between the two crimes.

Here, we conclude there was no common scheme or plan nor idiosyncratic similarities that would allow the two cases to be tried together. We further conclude that the evidence of the 2008 assault would not be admissible in the 2010 trial.

Nothing suggests that each offense was intended to assist in accomplishing a goal other than that achieved by each individual offense. The two offenses were separated by two years, one was a violent attack while the other involved a touching; one involved larceny, the other did not; the means by which the two offenses occurred were different; the record does not disclose whether the two victims had the same appearance. There was no logical connection between the two offenses.

We acknowledge there were general similarities, yet those similarities do not reflect a pattern of behavior. Cf. Johnson v. Commonwealth, 259 Va. 654, 676-78, 529 S.E.2d 769, 782-83 (2000) (finding evidence of two other rapes admissible to prove identity of defendant in rape and capital murder case because crimes bore "strong resemblance" to one another, including that defendant knew all three black female victims, did not force entry into their dwellings, used steak knives obtained from victims' dwellings in attacks, and asked for glass of water or drank from glass in each dwelling); Turner, 259 Va. at 651-53, 529 S.E.2d at 790-92 (finding evidence

of previous rapes and abductions admissible to prove defendant's identity when common idiosyncratic features included that defendant approached victims in shopping centers as they entered vehicles, asked for victims' names and addresses, ordered victims to look away from him, used weapon and threatened to kill victims, took car keys from each victim, and drove each victim away from scene where crimes committed); Spencer, 240 Va. at 81, 87-91, 393 S.E.2d at 611, 615-17 (finding evidence of "strikingly similar" offenses admissible to prove identity of defendant when common characteristics of offenses included entering bedrooms of victims through window, selecting victims who were Caucasian women with similar body structures, committing offenses on weekends while on leave from half-way house, and employing same type of strangulation for each victim).

Furthermore, even though the evidence of appellant's guilt is overwhelming, the error was not harmless in joining the two trials because the additional evidence of the other inadmissible offenses may have affected the jury's decision concerning appropriate punishment. See Burley v.Commonwealth, 29 Va. App. 140, 149, 510 S.E.2d 265, 270 (1999) (error harmless where it "clearly has had no impact upon the verdict or sentence in a case"). We cannot say the sentence ultimately imposed upon a finding of guilt for each separate offense date was not affected by the joinder for trial of the other charges.[6]

Because we find the trial court abused its discretion in joining the two offenses and that the error was not harmless, we reverse the convictions in each and remand for a new trial on each if the Commonwealth be so disposed.[7]

---

[6] Because we are resolving this issue by finding there was no common scheme, we need not address whether justice required separate trials.

[7] We do not decide whether evidence of one incident is admissible in the trial of the other incident on retrial.

- 10 -

Appellant challenges the sufficiency of the evidence as to the September 26, 2010 burglary of L.Z.'s apartment. He maintains that there is no evidence the burglary occurred at night or that he broke and entered the apartment in the daytime.

When presented with a sufficiency challenge on appeal, we review the evidence in the "light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). This principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted). "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Kelly v. Commonwealth, 41 Va. App. 250, 257-58, 584 S.E.2d 444, 447 (2003) (en banc) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Thus, we do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

Code § 18.2-90 provides, in pertinent part, "If any person . . . in the nighttime enters without breaking or in the daytime breaks and enters . . . a dwelling house . . . he shall be deemed guilty of statutory burglary." Thus, one commits statutory burglary under these code sections when one either enters in the nighttime or enters after breaking at any time. Griffin v. Commonwealth, 13 Va. App. 409, 411-12, 412 S.E.2d 709, 711 (1991). In this context, "the nighttime" means "the hours from sunset to sunrise." Wright v. Commonwealth, 49 Va. App. 312, 319, 641 S.E.2d 119, 122 (2007).

The evidence only proves the burglary took place between 2:00 a.m. when L.Z. returned to her apartment, and 10:15 a.m. when she awoke the next morning. This time period spans both the nighttime and daytime. There is no other evidence in which the fact finder could determine the time of the burglary. Further, the record is devoid of any facts that would prove a breaking occurred, an element of proof required if the burglary occurred during the daytime. The only evidence is that appellant entered the apartment.

The Commonwealth argues it is a jury issue whether the burglary arose during the night or day; whether it is more likely that appellant chose to commit the crime in the dark of the night to avoid detection or whether he would have chosen to commit the offense in the light of day where he could have easily been identified. The Commonwealth also contends that since L.Z. was clearly intoxicated at 2:00 a.m., but was aware of her surroundings at 10:15 a.m. when she arose, sufficient time had elapsed to suggest the entry took place at night. This argument is premised on allowing the jury to speculate. There are no facts in which to infer the time of the burglary. See Miller v. Commonwealth, 15 Va. App. 301, 311, 422 S.E.2d 795, 801 (1992) ("It is impermissible to allow 'the jury to grope in the realm of speculation for an inference or inferences not supported by facts proved from evidence presented.'" (quoting Lugo v. Joy, 215 Va. 39, 42, 205 S.E.2d 658, 661 (1974))).

Despite the parties' speculation as to whether L.Z. left her door open or unlocked, we first point out that there is no evidence in the record to support a "breaking" under Code § 19.2-90. A breaking for purposes of statutory burglary may be either actual or constructive. Johnson v. Commonwealth, 221 Va. 872, 876, 275 S.E.2d 592, 594 (1981).[8] "'Actual breaking involves the application of some force, slight though it may be, whereby the

---

[8] In the present case we are not concerned with an issue of constructive breaking, which requires a showing that the unlawful entrance was accomplished by threat of violence, by fraud, or by conspiracy. Johnson, 221 Va. at 876, 275 S.E.2d at 594.

entrance is [achieved]. Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of [burglary],'" so long as those acts "'resulted in an entrance contrary to the will of the occupier of the [property].'" Id. at 876, 275 S.E.2d at 594-95 (quoting Davis v. Commonwealth, 132 Va. 521, 523, 110 S.E. 356, 357 (1922)).

Therefore, in order to establish the element of breaking in the present case, the Commonwealth was required to prove that appellant applied some physical force, however slight, to gain entry to L.Z.'s residence. Because none exists in the record, we conclude the Commonwealth failed to prove a breaking.

Because the record is devoid of any evidence of breaking, the evidence must show that the entering occurred at nighttime to prove a burglary. However, the evidence shows only that the intrusion occurred between 2:00 a.m. and 10:15 a.m.

We therefore find the evidence insufficient to convict appellant of the burglary with the intent to commit rape pursuant to Code § 18.2-90. We reverse that conviction and dismiss that indictment.

### Lesser-Included Instruction

Appellant next contends the trial court erred in not giving appellant's proposed jury instruction on abduction with the intent to deprive Z.N. of her personal liberty as a lesser-included instruction of "abduction with the intent to defile."[9]

This argument is premised on appellant's statement to Z.N. that he could have raped her but stated, "I'm not going to." Thus, appellant concludes he did not abduct her with the intent to rape. However, this is not the standard we apply to determine an intent to defile.

---

[9] Appellant does not contest the abduction, only the element of intent.

- 13 -

Settled principles provided that an accused is entitled to a jury instruction not only on the offense charged but also on any offenses lesser included in the offense charged, Commonwealth v. Dalton, 259 Va. 249, 253, 524 S.E.2d 860, 862 (2000), as long as the proffered instruction finds support in the evidence, Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001). It is well established in Virginia that jury instructions "are proper only if supported by the evidence, and that more than a scintilla of evidence is necessary to support a lesser-included offense instruction requested by the defendant." Commonwealth v. Donkor, 256 Va. 443, 445, 507 S.E.2d 75, 76 (1998). Because the issue on appeal concerns the trial court's refusal of the lesser-included offense instruction, and even though the Commonwealth prevailed at trial, we must view the evidence on this issue in the light most favorable to appellant, the proponent of the instruction. Porter v. Commonwealth, 276 Va. 203, 241, 661 S.E.2d 415, 434 (2008).

In Simms v. Commonwealth, 2 Va. App. 614, 346 S.E.2d 734 (1986), this Court discussed abduction with the intent to defile and distinguished "sexual intercourse" from an "intent to defile."

> When the Commonwealth charged appellant with abduction with intent to defile under Code § 18.2-48, it had the burden of proving that appellant (1) abducted the complaining witness and (2) did so with the specific intent to defile. The elements of the offense of abduction with intent to defile are separate and distinct from the elements of attempted rape. Attempted rape includes the intent to engage in sexual intercourse with a female victim, whereas abduction with intent to defile requires an intent to sexually molest a victim of any sex. See Fitzgerald v. Commonwealth, 223 Va. 615, 632, 292 S.E.2d 798, 808 (1982), cert. denied, 459 U.S. 1228 (1983) (the terms "defile" and "sexually molest" are interchangeable within the meaning of Code § 18.2-48). Sexual molestation, while including sexual

- 14 -

> intercourse, also embraces many acts which are distinct from sexual intercourse. See Code § 18.2-67.10(6).[10]

Simms, 2 Va. App. at 617, 346 S.E.2d at 735 (footnote added).

Here, appellant woke Z.N. from her sleep. He touched her buttocks. He restrained her when she attempted to arise from her bed. As Z.N. attempted to escape, appellant brought her back into the living room where her bed was located. He masturbated, with an exposed penis, in front of Z.N. He also made Z.N. expose her breasts while he masturbated.

The issue before us is not whether appellant is guilty of aggravated sexual battery pursuant to Code § 18.2-67.3 or sexual battery pursuant to Code § 18.2-67.4, but whether he abducted her with the intent to defile, i.e., to sexually molest Z.N. The fact that he said he could have raped her or that there was no evidence he attempted to rape her is irrelevant. As we stated in Simms, rape is only one manifestation of an intent to defile.

Here, there is no evidence to support granting an instruction on abduction with the intent to deprive Z.N. of her liberty. Throughout the incident, all of appellant's activities were sexual in nature, from touching Z.N.'s buttocks, to exposing his penis and masturbating, to telling Z.N. to expose her breasts, and to asking whether Z.N. had pornography.

Thus, the trial court did not err in not granting the lesser-included instruction.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in denying appellant's jury instruction on a lesser-included offense of simple abduction of Z.N. However, we conclude that the trial court erred in finding the evidence sufficient to sustain appellant's

---

[10] Sexual abuse, as defined by Code § 18.2-67.10, means the act was committed "with the intent to sexually molest, arouse, or gratify any person[.]" Pulliam v. Commonwealth, 55 Va. App. 710, 714, 688 S.E.2d 910, 912 (2010). "Molest is defined as 'to meddle or interfere with unjustifiably often as a result of abnormal sexual motivation.'" Id. at 715 n.2, 688 S.E.2d at 913 n.2 (quoting Webster's Third New International Dictionary 1455 (1993)).

conviction for breaking and entering with the intent to commit rape and dismiss that indictment.

We further conclude that the trial court erred in not severing the two trials as to the two separate

offense dates. We remand those cases with instructions to try each of the alleged offenses

occurring on September 10, 2008 separate and apart from those alleged offenses occurring on

September 26, 2010, if the Commonwealth be so inclined.

We therefore reverse and dismiss in part, and reverse and remand in part.[11]

<u>Reversed and dismissed in part</u>
<u>and reversed and remanded in part.</u>

---

[11] We decline to reach the merits of the issues involving the exclusion of appellant's DNA evidence and the trial court's denial of appellant's request for supplemental funding for a DNA expert because on remand, the resolution of those issues will have to be determined in the context of the evidence presented at the new trial. On remand, there may or may not be a notice issue pursuant to Code § 19.2-270.5. As to additional funding for a DNA expert, we cannot anticipate whether appellant might amplify his proffer by submitting affidavits or similar specific testimony of the expert witness. Further, as it appears that the trial court had previously authorized funds to employ the expert witness, we cannot speculate on whether that expert witness, if subpoenaed, would be entitled to compensation and mileage pursuant to Code § 17.1-612.